UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA RODRIGUEZ,<br><br>Plaintiff,<br>v.<br><br>CITY OF WEST COVINA, *et al.*,<br><br>Defendants. | Case No.: CV 17-138-CBM-JC<br><br>**ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT OF ISSUES**<br><br>**[Dkt. No. 66]** |

The matter before the Court is Defendants City of West Covina, West Covina Police Department, and Officer Jesse Miller's (collectively, "Defendants'") Motion For Summary Judgment, or in the Alternative, Partial Summary Judgment of Issues. (Dkt. No. 66.)

## I. BACKGROUND

This is a civil rights action, wherein Plaintiff asserts the following causes of action: (1) deprivation of Civil Rights – Individual Liability (42 U.S.C. § 1983) (excessive force); (2) violation of the Bane Act, Cal. Civ. Code § 52.1; and (3) assault and battery.[1]

---

[1] Plaintiff's *Monell* claim was dismissed without prejudice pursuant to the parties' stipulation. (Dkt. No. 56.)

1

## II. STATEMENT OF THE LAW

On a motion for summary judgment, the Court must determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact. *Simo v. Union of Needletrades, Indus. & Textile Employees*, 322 F.3d 602, 609-10 (9th Cir. 2003); Fed. R. Civ. P. 56. Summary judgment against a party is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. In judging evidence at the summary judgment stage, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also Liston v. Cty. of Riverside*, 120 F.3d 965, 977 (9th Cir. 1997) ("For the purposes of summary judgment, even in a qualified immunity case, we must assume the nonmoving party's version of the facts to be correct. The question, then, is whether, accepting the facts alleged by the [plaintiffs] as true, defendants are entitled to summary judgment as a matter of law."). "[S]ummary judgment should be granted sparingly in excessive force cases." *Gonzalez v. City of Anaheim*, 747 F.3d 789, 795 (9th Cir. 2014) (en banc); *see also Estate of Lopez by & through Lopez v. Gelhaus*, 871 F.3d 998, 1006 (9th Cir. 2017) (same).

## III. DISCUSSION

**A. Excessive Force**

Defendants argue they are entitled to summary judgment on Plaintiff's excessive force claim because (1) Officer Miller's use of a police canine was objectively reasonable; and (2) Officer Miller is entitled to qualified immunity.

**1. Reasonableness**

"[T]he question [in an excessive force inquiry] is whether the officers' actions are objectively reasonable in light of the facts and circumstances

confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (internal quotations and citation omitted). This objectively reasonable standard requires a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396. "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Id*. The use of a police canine is subject to an excessive force analysis. *Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir. 1994).

The following facts are undisputed:

(1) On May 27, 2016, West Covina police officers received a radio transmission from the West Covina Police Department Dispatch, that there was a "group" of males fighting inside the West Covina mall (Defendants' Statement of Fact ("SUF")[2] No. 1);

(2) Plaintiff was involved in that fight (SUF No. 2);

(3) Plaintiff left the mall with a female named Brittany Benquechea, and got into the passenger seat of a vehicle that Benquechea was driving (SUF Nos. 2, 3);

(4) Benquechea called West Covina Emergency 911 Dispatch and falsely reported that her own car had just been stolen at gun point, described her car, and provided a description of the carjackers that matched Benquechea and Plaintiff (SUF No. 3);

(5) Plaintiff heard Benquechea's 911 call and heard Benquechea report the carjacking suspect had a gun (SUF No. 4);

(6) Officers were dispatched to the vicinity of the mall to locate the described vehicle which was reported as stolen at gunpoint, Officer Miller responded to the dispatch (SUF No. 5);

(7) Officer Miller located a vehicle matching the description

---

[2] As used herein, "SUF" refers to the statement of fact and evidence cited in support thereof.

reported to dispatch, and turned on his lights to indicate the vehicle was required to pull over but the vehicle led officers on a high speed pursuit for at least two minutes reaching speeds of 90 miles per hour during which the vehicle failed to yield to several red lights, collided with numerous other vehicles, and eventually stopped perpendicular to a McDonald's drive thru (SUF Nos. 6-7);

(8) Officer Miller was the first officer on scene (SUF No. 8);

(9) When Benquechea's car stopped moving and at the time Officer Miller arrived at the scene, Plaintiff was in the process of exiting or had already exited the vehicle (SUF No. 9);

(10) Plaintiff took a couple of steps towards the McDonald's drive thru upon exiting the vehicle (SUF No. 10);[3]

(11) While taking steps towards the McDonald's drive thru, Plaintiff heard officers yelling commands at him to "get on the floor" (SUF No. 12);

(12) After walking next to the car, Plaintiff got on his hands and knees, and intended this action to comply with the direction he heard from officers to "get on the floor," and as an act of surrender (SUF No. 13);

(13) Officers commanded Plaintiff to get "all the way down," but Plaintiff remained on his hands and knees and was rocking back and forth while on his hands and knees (SUF No. 15);[4]

---

[3] At Plaintiff's deposition, Plaintiff testified that he was thinking about running when he stepped towards McDonald's. (Plaintiff Depo. 101:17-23.)

[4] Plaintiff contends this fact is controverted, relying on deposition testimony from Officer Brian Rodriguez who testified that he recalls Officer Miller saying "Get on the ground." (B. Rodriguez Depo. 64:3-5.) Officer Rodriguez's testimony, however, does not create a genuine issue of disputed fact because he does not testify as to the specific time he recalls Officer Miller giving that command. Moreover, there is a video of the incident wherein an officer is heard saying get "all the way down" while Plaintiff is rocking back and forth on his hands and knees. (Gardea Decl. Ex. C.) The parties do not dispute the accuracy of the video. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (noting "[a]t the summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts," and concluding the Court of Appeals should not have adopted the respondent's version of events which were contradicted by a videotape of the incident, and instead "should have viewed the facts in the light depicted by the videotape").

4

(14) Plaintiff had multiple tattoos visible on his arms, some of which had been obtained in prison and which Officer Miller recognized as prison tattoos (SUF No. 14);

(15) Benquechea remained in the vehicle and was not readily visible to officers (SUF No. 16); and

(16) During this time the reported gun had not been searched for or accounted for by officers (SUF No. 17);

(17) Officer Miller stepped toward the back of his police vehicle, opened the rear door where the canine was located, and gave the bite command to the canine several times, and immediately radioed to dispatch for medical assistance due to the deployment and bite of the dog (SUF No. 19);

(18) Officer Miller did not give a warning that the canine would be released prior to the bite command (SUF No. 20);

(19) At the time the canine was deployed, approximately four officers were pointing guns at Plaintiff (SUF No. 24);

(20) From the time that Officer Miller first stopped at the scene and to the time the canine was deployed, "other officers were continually arriving" (SUF No. 23);

(21) The police canine continued to bite Plaintiff's arm for over one minute (SUF No. 27); and

(22) Plaintiff was required to have several surgeries to repair the dog bite injuries, and has permanent scarring and residual grip weakness due to the bites (SUF No. 32).

While the facts are largely undisputed, there is a triable issue of fact as to whether the deployment of the police canine, and the duration and continued use of the canine, was an unreasonable use of force.

On the one hand, a jury could reasonably conclude that Officer Miller's deployment of the police canine was reasonable because at the time of deployment, Officer Miller reasonably believed Plaintiff was an immediate threat to the safety of officers and the public since Plaintiff matched the description of a

5

person involved in a reported armed carjacking, the gun from the reported carjacking had not been accounted for, the vehicle in which Plaintiff was a passenger led officers on a high speed chase, disobeyed numerous traffic laws and collided with vehicles, Plaintiff had taken steps towards the McDonald's drive thru when he exited the vehicle and had intended to flee, and Plaintiff remained on his hands and knees despite commands from officers to get "all the way down." *See Graham*, 490 U.S. at 396; *see, e.g., Smalley v. Kinsella*, 2017 WL 4684032, at *2-*3 (D. Or. Oct. 17, 2017); *Koistra v. Cty. of San Diego*, 2018 WL 1876116, at *7 (S.D. Cal. Apr. 19, 2018). On the other hand, a jury could reasonably conclude that Plaintiff had surrendered and the deployment of the canine was unreasonable because no warning was given that the canine would be deployed, approximately four officers had guns pointed at Plaintiff while he was on his hands and knees, and more officers were arriving at the scene, when the police canine was deployed. A jury could therefore find that at the time of deployment of the police canine, Plaintiff no longer posed an immediate threat to the safety of officers or others, and was not actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396; *see, e.g., Zion v. Cty. of Orange*, 874 F.3d 1072, 1076 (9th Cir. 2017) ("[i]f a jury were to find that Higgins shot and/or stomped on Zion's head after Zion ***no longer posed an immediate threat***, Higgins would have been on notice that his conduct would be clearly unlawful.") (emphasis added); *Burns v. City of Concord*, 2017 WL 5751407, at *12–*13 (N.D. Cal. Nov. 28, 2017) (finding the court could not determine as a matter of law that the officer's deployment of his dog and the force the dog applied to plaintiff was reasonable in part because a jury could reasonably find that when the officer deployed his dog, plaintiff no longer posed a threat).

In addition, a jury could reasonably conclude that the continued use of the police canine was an unreasonable use of force because the undisputed evidence demonstrates (1) the police canine used by Officer Miller continued to bite

6

Plaintiff for over a minute while numerous officers were on scene, some of whom had their guns pointed at Plaintiff; and (2) Plaintiff had several surgeries to repair the injuries he sustained from the dog bites and has permanent scarring and residual grip weakness as a result of the bites. (SUF Nos. 24, 27, 32.)[5] *See Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) ("excessive duration of the bite and improper encouragement of a continuation of the attack by officers could constitute excessive force that would be a constitutional violation"); *Koistra*, 2018 WL 1876116, at *9-*10.

Accordingly, the Court cannot conclude as a matter of law that Officer Miller's use of a police canine was objectively reasonable. *See Liston*, 120 F.3d at 977 (reversing order granting summary judgment in favor of defendants on plaintiffs' excessive force claim, reasoning the court was "unable to conclude as a matter of law that the force used upon the [plaintiffs] . . . was reasonable, or that reasonable officers could have concluded that their acts during this entire period comported with the Fourth Amendment," and "[i]t is for the finder of fact to determine the reasonableness of the force used in this case").

### 2. Qualified Immunity

Courts engage in a two-pronged analysis to determine whether qualified immunity applies. Officers are entitled to qualified immunity under § 1983 unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time." *Easley v. City of Riverside*, --- F.3d ----, 2018 WL 2273067, at *3 (9th Cir. May 18, 2018) (citing quoting *District of Columbia v. Wesby*, ––– U.S. ––––, 138 S.Ct. 577, 589 (2018)).

---

[5] There is also a disputed issue of fact as to whether Plaintiff was complying with officers' commands while the police canine was biting Plaintiff's arm. Plaintiff testified at his deposition that he complied with all of the officers' commands while he was being bitten (Plaintiff Depo. 110:9-14), but Officer Rodriguez testified at his deposition that Plaintiff was hiding his hands and tucking his hand toward his waistband away from officers while he was being bitten even though an officer told Plaintiff to show his hands (B. Rodriguez Depo. 80:7-17, 81:17-25, 83:13-16).

Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* (citation omitted). Under the second prong, the Court must analyze "two discrete sub-elements": "whether the law governing the conduct at issue was clearly established" and "whether the facts as alleged could support a reasonable belief that the conduct in question conformed to the established law." *Id*. (citation omitted). "[A] Government official's conduct violates clearly established law when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1038 (9th Cir. 2018) (internal quotations and citation omitted). While a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* "Clearly established law should not be defined at a high level of generality," and "the clearly established law must be particularized to the facts of the case." *Id*. (internal quotations and citations omitted). "Such specificity is especially important in the Fourth Amendment context, where the [Supreme] Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" *Id*. (quoting *Mullenix v. Luna*, ––– U.S. –––, 136 S.Ct. 305, 308 (2015)).

It was clearly established at the time of the underlying incident that an officer's use of force against a suspect who no longer poses an immediate threat can violate the Fourth Amendment. *See Zion*, 874 F.3d at 1076 (holding defendants were not entitled to qualified immunity because "[i]f a jury were to find that Higgins shot and/or stomped on Zion's head after Zion ***no longer posed an immediate threat***, Higgins would have been on notice that his conduct would be clearly unlawful," noting "[w]e've . . . held that continued force against a

8

suspect who has been brought to the ground can violate the Fourth Amendment") (emphasis added) (citing *Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003); *Davis v. City of Las Vegas,* 478 F.3d 1048 (9th Cir. 2007)); *Burns*, 2017 WL 5751407, at *13 (noting police cannot use continued force against a suspect who no longer poses a threat, and concluding a reasonable jury could find that the officer's deployment of a dog on an individual who posed no threat to officers violated clearly established law) (citing *Zion*, 874 F.3d at 1076); *Drummond*, 343 F.3d at 1057-58; *Davis*, 478 F.3d at 1053));[6] *see also Mendoza*, 27 F.3d at 1362 ("[N]o particularized case law is necessary for a deputy to know that excessive force has been used when a deputy sics a canine on a handcuffed arrestee who has fully surrendered and is completely under control."). Accordingly, Officer Miller would have been on notice that the use of force (i.e., deployment of the canine) against Plaintiff was clearly unlawful if Plaintiff had surrendered and was no longer an immediate threat to officers or others.

At the time of the underlying incident, it was also "clearly established that excessive duration of the bite and improper encouragement of a continuation of the attack by officers could constitute excessive force that would be a constitutional violation." *Watkins*, 145 F.3d at 1093. Here, it is undisputed that the police canine deployed by Officer Miller continued to bite Plaintiff while Plaintiff was on his hands and knees and surrounded by police officers with their guns drawn. Therefore, Officer Miller would have been on notice that the duration of the bite(s) by the police canine, if excessive, would be unlawful. *See id.*; *Zion*, 874 F.3d at 1076; *see also Koistra*, 2018 WL 1876116, at *13 (finding

---

[6] Although *Zion* was decided in 2017, *Zion* cites to the Ninth Circuit's decisions in *Drummond* and *Davis*, decided in 2003 and 2007 respectively, in noting that "[w]e've also held that continued force against a suspect who has been brought to the ground can violate the Fourth Amendment." *Zion*, 874 F.3d at 1076. *Burns*, although decided in 2017, also cites to the Ninth Circuit's decisions in *Drummond* and *Davis* in discussing the clearly established law. *See Burns*, 2017 WL 5751407, at *13.

9

officer was not entitled to a qualified immunity defense on "the continued and prolonged use of the 'bite and hold' by the canine after [plaintiff] surrendered" because "it was clearly established and a reasonable officer would have known that the continued seizure by a police canine after [plaintiff] surrendered for an additional 30 seconds was unlawful").

Accordingly, the Court denies summary judgment to Defendants on the issue of qualified immunity.

**B.  State Law Claims – Bane Act, Assault, and Battery**

Since there is a triable issue of fact as to whether the deployment of the police canine and the duration of the use of the canine were reasonable, the Court denies Defendants' motion for summary judgment as to Plaintiff's state law claims based on the ground those claims fail because the use of the police canine was reasonable. The Court also denies Defendants' motion for summary judgment as to Plaintiff's Bane Act claim on the ground it fails because there is no separate act of violence, threat of violence, or coercion separate from the alleged constitutional wrong. *See Rodriguez v. Cty. of Los Angeles*, --- F.3d ----, 2018 WL 2424581, at *17 (9th Cir. May 30, 2018) ("in excessive force cases, . . . § 52.1 does not require proof of coercion beyond that inherent in the underlying violation"); *Reese*, 888 F.3d at 1043 ("The Bane Act does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged") (citing *Cornell v. City and Cty. of San Francisco*, 17 Cal. App. 5th 766 (Cal. Ct. App. 2017)).

### IV.  CONCLUSION

Accordingly, Defendants' Motion For Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

DATED: June 14, 2018.

_____
CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE